IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

COLUMBINE MANAGEMENT SERVICES, INC. D/B/A COLUMBINE HEALTH SYSTEMS, INC.,

AND

THE WORTHINGTON, INC., D/B/A NEW MERCER COMMONS ASSISTED LIVING FACILITY

    Defendants.

**COMPLAINT AND JURY TRIAL DEMAND**

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct company-wide unlawful employment practices by Defendant Columbine Management Services, Inc. d/b/a Columbine Health Systems and The Worthington, Inc. d/b/a New Mercer Commons Assisted Living Facility, on the basis of national origin, African, and to provide appropriate relief to healthcare workers Kiros Areghgn, Mohamed Osman Mohgoub, Sawson Ibrahim, Hanaa Gual, and any other as yet unidentified African employees who were, or continue to be, adversely affected by

Defendants' use in 2009, and on an ongoing basis, of an unlawful employment exam which disparately impacts the equal employment opportunities of African exam-takers and/or which was intentionally manipulated by Defendants to unlawfully terminate African test-takers from current employment.

This action also seeks to remedy the disparate treatment and discharge of African employees once employed by Defendants at the New Mercer Commons assisted living facility, and to provide appropriate relief to Marlene Hoem, a white non-African supervisor who refused to engage in discriminatory practices against African employees at New Mercer and so was terminated by Defendants in retaliation for her protected conduct.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration,

interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times (2008 through the present and ongoing), Defendant Columbine Management Services, Inc. d/b/a Columbine Health Systems, Inc. ("Columbine"), a Colorado corporation, has continuously been doing business in the State of Colorado and has continuously had at least 15 employees.

5. At all relevant times, Defendant Columbine has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant The Worthington, Inc. d/b/a New Mercer Commons ("New Mercer Commons"), a Colorado corporation, has continuously been doing business in the State of Colorado and has continuously had at least 15 employees.

7. At all relevant times, Defendant New Mercer Commons has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

8. In 2008 and 2009, Defendant Columbine employed Kiros Areghgn, Mohamed Osman Mohgoub, Sawson Ibrahim, Hanaa Gual, and Marlene Hoem.

9. At all relevant times, Defendant Columbine has wholly owned, operated, and managed Defendant New Mercer Commons, where Kiros Areghagn, Mohamed Osman Mohgoub, Sawson Ibrahim, Hanaa Gual, and Marlene Hoem were employed.

10. For each working day in each of 20 or more calendar weeks in the years 2008 and 2009 Defendant Columbine employed over 500 employees.

11. For each working day in each of 20 or more calendar weeks in the years 2009 through the present and ongoing, Defendant Columbine has employed over 500 employees.

## **CONDITIONS PRECEDENT**

12. More than thirty days prior to the institution of this lawsuit, Kiros Areghgn filed a charge with the Commission alleging violations of Title VII by Defendant New Mercer Commons.

13. The EEOC provided Defendants with notice of the charge.

14. EEOC investigated the charge of discrimination.

15. Based on evidence uncovered during the EEOC's investigation, EEOC issued a letter of determination to Columbine Health Systems and New Mercer Commons, finding reasonable cause to believe that Defendants had engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.

16. The Commission's determination included an invitation for Defendants to join the Commission in informal methods of conference, conciliation, and persuasion in an attempt to eliminate and remedy the alleged unlawful employment practices.

17. Defendant participated with EEOC in conciliation, during which process Defendant and EEOC communicated regarding the alleged unlawful employment practices and how to eliminate and remedy them.

18. The Commission and Defendant were unable to reach an agreement acceptable to the Commission through the conciliation process.

19. The Commission sent notice to Defendants that conciliation had failed.

20. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

21. Kiros Areghgn is of Ethiopian national origin and immigrated to the United States in 1995.

22. Areghgn's native language is Tigrinya.

23. Areghgn was employed as a Personal Care Provider (PCP) at New Mercer Commons from January 3, 2000 until May 11, 2009.

24. Areghgn received an annual merit increase commensurate with her annual evaluation every year from 2001 through 2008.

25. For each year following Defendants' introduction of a numeric evaluation system in approximately 2007, Areghgn received above-average numeric rankings on her annual evaluations.

26. At the time of Areghgn's employment, Defendants had a progressive discipline policy in place at New Mercer Commons which states that unacceptable behavior not warranting immediate termination may be dealt with in the following sequence: verbal warning, written warning, dismissal.

27. The progressive discipline policy requires supervisors or managers to state the reasons for dissatisfaction with an employee and provide any supporting evidence, and then affords employees an opportunity to defend their actions and rebut the negative opinion of a supervisor or manager at the time the warning is issued.

28. Between 2000 and the end of 2008, Areghgn did not receive any discipline.

29. Between 2000 and 2008, the Staff Development Coordinator at New Mercer Commons was Marlene Hoem.

30. In or about the end of 2007 or beginning of 2008, Defendants hired a new Director at New Mercer Commons, Pamela Lewis.

31. In or about the middle of 2008, Lewis told Hoem privately, referring to the African employees, that New Mercer Commons had to get rid of "these people: because they just can't speak English."

32. In response to Lewis, Hoem protested and said that the African employees were well-liked by the patients and spoke English fine.

33. On September 22, 2008, Lewis ordered Hoem to remove an African employee from the floor as a PCP.

34. Hoem reasonably believed that carrying out Lewis' directive would result in unlawful discrimination, and therefore, declined to carry out the directive.

35. On September 29, 2008, Lewis authored a memorandum cataloguing the reasons she was terminating Hoem, expressly including as the first reason Hoem's refusal to remove an African PCP from the floor whom Lewis believed spoke poor English.

36. On September 30, 2008, Defendants terminated Hoem.

37. At the time of her termination, Hoem had worked for Defendants for more than 14 years.

38. On or about September 30 or October 1, 2008, Defendants promoted Andrea ("Andi") Colburn (female) into a Staff Development Coordinator position with direct supervision responsibilities over the PCPs at New Mercer Commons, including Areghgn.

39. Upon information and belief, on September 30 or October 1, 2008, Victoria Rauch was promoted to a Staff Development Coordinator position with management responsibilities over the PCPs at New Mercer Commons, including Areghgn.

40. On January 26, 2009, Areghgn received above a 2.0 numeric average on her annual evaluation.

41. Defendants at that time ranked a 2.0 as "Meets Expectations."

42. However, Defendants alleged to the EEOC that Areghgn received a sub-average "Below Expectations" ranking in 2009 on her annual evaluation.

43. In 2009, Defendants denied Areghgn a merit-based increase for the first time in her nine-year tenure at New Mercer Commons.

44. On March 23, 2009, Defendants placed Areghgn on a Performance Improvement Plan (PIP) for the first time in her 9-year tenure with New Mercer Commons.

45. The PIP gave Areghgn only 3 weeks to improve on the alleged deficiencies.

46. The PIP required Areghgn to:

7

    a. Speak in English at all times.

    b. Improve documentation on residents, although the PIP did not specify any deficiencies in Areghgn's paperwork.

    c. Take more initiative to assist co-workers in other halls when she was not in her assigned area.

    d. Attend the PCP Training Course at the Geriatric Education Center, which was also mandatory for all other PCPs at New Mercer Commons.

47. In 2009, Mohamed Osman Mohgoub, Sawson Ibrahim, and Hanaa Gual also worked for Defendants as PCPs at New Mercer Commons.

48. Mohgoub, Ibrahim, and Gual are immigrants from Sudan.

49. Mohgoub, Ibrahim and Gual, along with Areghgn and the other PCPs at New Mercer Commons were all required to complete the PCP Training Course at Defendants' in-house Geriatric Education Center at the end of April 2009.

50. April 2009 was the first time that Defendant Columbine required its PCP employees to complete the PCP Training Course.

51. As part of the PCP Training Course, Defendant Columbine required all the PCPs at New Mercer Commons to complete a written exam ("the PCP exam").

52. The PCP exam was developed by Penny Rubala, RN, MSN, and Director of Clinical Education for Columbine, and her supervisor, Annette Olson, RN, Healthcare Care Coordinator for Columbine.

53. Upon information and belief, Defendant Columbine continues to this day to require its PCP employees to complete the PCP Training Course including a PCP written exam.

54. The PCP written exam in use today is the same exam, with only minor changes to format, that was used in 2009.

55. Between 2009 and at least 2011, Defendants did not require new applicants for employment as PCPs to take the PCP exam before they were first hired.

56. Between 2009 and at least 2011, Columbine tested only currently employed PCPs at New Mercer Commons, Lakeview Commons, and Caring Solutions.

57. Upon information and belief, Columbine still does not require PCP applicants for new employment to complete the PCP exam before they are offered employment. The PCP exam was not validated before the PCPs were required to complete the exam in 2009.

58. The PCP exam has not undergone content validity analysis anytime between 2009 and the present.

59. The PCP exam is modeled on the Certified Nurse Aid (CNA) training course and exam.

60. The job duties of a PCP are not the same as those of a CNA.

61. Defendants did not complete any formal job analysis of the essential skills or job duties necessary to perform the PCP position, before or as part of developing the PCP exam.

62. Defendants did not assess whether performance on the PCP exam correlates with job performance.

63. Questions on the PCP exam include test questions that feature linguistic and structural characteristics known to confuse ESL (English as a second language) test-takers, and which test extraneous variables unrelated to the skills the exam was intended to measure.

64. Areghgn, Mohgoub, Ibrahim, Gual, and the other PCPs in the April 2009 PCP training course were not told beforehand by Defendants that if they failed the exam, they would be terminated.

65. Defendants did not make the decision to terminate PCP employees who did not pass the April 2009 PCP exam until after Areghgn, Mohgoub, Ibrahim, and Gual had completed the April 2009 PCP course and had completed the exams.

66. As late as the day before the test, the harshest penalty discussed for failing the test was withholding a certificate of completion of the course.

67. Areghgn and other African employees were given little if any partial credit for questions answered at least in part correctly, compared to a number of their non-African peers who were given partial credit for partially correct answers.

68. Similarly, little if any partial credit was given to the African employees when they misunderstood the wording of the question, but their responses indicated that they knew the information being tested.

69. In May of 2009, Areghgn, Mohgoub, Ibrahim, and Gual were fired by Defendants.

70. On the day they were fired, the stated reason New Mercer Commons gave Areghgn, Mohgoub, Ibrahim, and Gual for the decision was that they failed to pass the PCP exam. No other reason was given to them.

71. Defendants admit that they fired Areghgn, Mohgoub, Ibrahim, and Gual because they received scores of less than 75% on the PCP exam.

72. The sole and only reason Defendants gave Areghgn for her termination was that she did not receive a passing score on the PCP exam.

73. The sole and only reason Defendants gave Gual for her termination was that she did not receive a passing score on the PCP exam.

74. The sole and only reason Defendants gave Mohgoub for his termination was that he did not receive a passing score on the PCP exam.

75. The sole and only reason Defendants gave Ibrahim for her termination was that she did not receive a passing score on the PCP exam.

76. Between 2009 and 2011, 4 of the 5 lowest scores of all test-takers who completed the exam were received by individuals of African national origin.

77. Between 2009 and 2011, 4 of the 5 employees who were terminated for failing to pass the exam were of African national origin.

78. A disproportionate percent of the African exam takers failed the exam, compared to their proportion among the exam-takers.

79. Only one non-African exam taker failed the exam.

80. African employees failed the exam at a statistically significant rate compared to their proportion among the exam-takers.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF

### [Disparate Treatment Discrimination – 42 U.S.C. § 2000e-2(a)]

81. The allegations contained in the foregoing paragraphs are incorporated by reference.

82. Since at least 2009 Defendants engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by disparately evaluating, disciplining, withholding raises, and discharging Charging Party Kiros Areghgn because of her African national origin, and by discharging other African employees because of their national origin.

83. Defendants placed Areghgn on a Performance Improvement Plan and denied her an annual merit-based raise in 2009 because of stereotypes and misconceptions about her African origin.

84. In 2009, Defendants' management manifested, through their comments and actions, a bias against PCPs of African national origin.

85. In 2009, Defendants exploited the PCP exam as a pretext for firing Areghgn and other African PCP employees because of their national origin.

86. The effect of the practices complained of above has been to deprive Areghgn, Mohgoub, Ibrahim, Gual, and other African employees, of equal employment opportunities and otherwise adversely affect their employment status because of their national origin.

87. The unlawful employment practices complained of above were and are intentional.

88. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Areghgn and other aggrieved African employees.

## SECOND CLAIM FOR RELIEF

### [Disparate Impact Discrimination – 42 U.S.C. § 2000e-2(a)]

89. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

90. Since April 2009, and ongoing through the present, Defendants engaged in unlawful employment practices on a company-wide basis, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating and instituting employment criteria (receiving a passing score on the PCP exam as a condition of continuing employment) that disparately affected employment opportunities for African employees, including Areghgn, Mohgoub, Ibrahim, Gual, and a group of other as yet unidentified aggrieved individuals.

91. The effect of instituting the employment criteria complained of above has been to deprive Areghgn, Mohgoub, Ibrahim, Gual, and other as yet unidentified aggrieved individuals, of equal employment opportunities and otherwise adversely affect their status as employees, because of national origin.

### THIRD CLAIM FOR RELIEF

### [Retaliation – 42 U.S.C. § 2000e-3]

92. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

93. In 2008, Defendants engaged in unlawful employment practices at New Mercer Commons in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-3 by retaliating against Marlene Hoem for engaging in protected activity under Title VII.

94. Hoem protested discriminatory remarks by management and refused to participate in what she reasonably believed were discriminatory employment practices against African PCPs, including removing them from their positions for invalid and discriminatory reasons, as Hoem was instructed to do.

95. Hoem was terminated as a result of her protected activity.

96. The effect of the practice complained of above has been to deprive Hoem of equal employment opportunities and otherwise adversely affect her employment status because she engaged in protected activity.

97. The unlawful employment practices complained of above were and are intentional.

98. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Hoem.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in national origin discrimination and from retaliating against employees who engage in protected activity.

B.      Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for African employees, and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendants to validate the PCP exam, and any future versions of the PCP exam, through an outside vendor, agreed upon by the EEOC, that specializes in ensuring that employment exams do not cause a disparate impact on protected classifications in violation of Title VII of the Civil Rights Act of 1964, as amended.

D.      Order Defendants to make whole Kiros Areghgn, Mohamed Osman Mohgoub, Sawson Ibrahim, Hanaa Gual, Marlene Hoem, and other as yet unidentified aggrieved individuals by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including but not limited to reinstatement or front pay in lieu thereof.

E.      Order Defendants to make whole Kiros Areghgn, Mohamed Osman Mohgoub, Sawson Ibrahim, Hanaa Gual, Marlene Hoem, and other as yet unidentified aggrieved individuals, by providing compensation for past and future pecuniary losses

resulting from the unlawful employment practices described above including, but not limited to, job search expenses, medical expenses, and job (re)training or education costs, in amounts to be determined at trial.

F.  Order Defendants to make whole Kiros Areghgn, Mohamed Osman Mohgoub, Sawson Ibrahim, Hanaa Gual, Marlene Hoem, and other as yet unidentified aggrieved individuals, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.  Order Defendants to pay Kiros Areghgn, Mohamed Osman Mohgoub, Sawson Ibrahim, Hanaa Gual, Marlene Hoem, and other as yet unidentified aggrieved individuals, punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

H.  Grant such further relief as the Court deems necessary and proper in the public interest.

I.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

P. David Lopez
General Counsel

Gwendolyn Reams
Associate General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office

Rita Byrnes Kittle
Supervisory Trial Attorney

*/s/ Iris Halpern*
Iris Halpern
Lead Trial Attorney
Phone: (303) 866-1374
Iris.halpern@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Denver District Office